# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE,
## NORTHEASTERN DIVISION

WESTFIELD INSURANCE COMPANY  )
              )
   Plaintiff,       )
              )
vs.            )   Case No. _____
              )
THE GRIPPER GASKET COMPANY,  )
L.L.C.           )
              )
   Defendant.      )

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Comes now the Plaintiff, Westfield Insurance Company, and files a Complaint for Declaratory Judgment against the Defendant, The Gripper Gasket Company, L.L.C., to determine the rights and liabilities of the parties under a general liability policy and would show unto the Court as follows:

1.  The Plaintiff, Westfield Insurance Company, is a foreign insurance corporation with its principal place of business in the city of Westfield Center, State of Ohio, and has complied with the laws of the State of Tennessee pertaining to corporations engaging in insurance business therein, and has paid all taxes and assessments and license fees, and has filed all reports required by the State of Tennessee.

2.  The Defendant, The Gripper Gasket Company, L.L.C., is a limit liability company organized and existing under the laws of the State of Tennessee, engaged in the business of boltless restraining gaskets for use in piping materials in the water and wastewater industry, and having its principle place of business in the State of Tennessee, located at 345 Plainview Heights Circle, Greeneville, Tennessee, 37745.

3.     This Declaratory Judgment action is brought under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. The jurisdiction of this Court is based on Title 28 U.S.C. §1332 (a), there being diversity of citizenship between the parties. The matter in controversy exceeds the sum of Seventy Five Thousand Dollars 00/100 ($75,000.00), exclusive of interest and costs.

4.     The controversy between the parties arises out of a civil action pending in the State of Louisiana, R.J. Broussard General Contractors, Inc. v. Lafayette Winwater Works, Company, The Gripper Gasket Company, L.L.C., Westfield Insurance Company and Travelers Property Casualty Company of America, 15th Judicial District Court, Lafayette Parrish, Louisiana, Division "B", Docket Number 2008-1870. (Hereinafter referred to as the "Broussard Action") and a copy of the Complaint in the "Broussard Action" is attached hereto as *Exhibit "A"*.

5.     The Plaintiff in the Broussard Action, alleges in relevant part, as follows:

> "4.     After constructing the waterline by installing the ductile iron pipe and the gaskets provided by LAFAYETTE WINWATER WORKS COMPANY, in April, 2007 the water lines was pressure tested which revealed leaves in several joints of the water line.
>
> 5.     Once the leaks were discovered, further testing and investigation was conducted and it was determined that the gaskets provided by LAFAYETTE WINWATER WORKS COMPANY failed and it was also discovered that the gaskets provided by LAFAYETTE WINWATER WORKS COMPANY were not the Field Lok 350 gaskets ordered by the Petitioner but were inferior and defective Gripper Gaskets manufactured by the GRIPPER GASKET COMPANY which gaskets did not meet the project specifications.
>
> 6.     For several years, the Petitioner has ordered and purchased from the LAFAYETTE WINWATER WORKS COMPANY the Field Lok 350 gaskets, at no time has the Petitioner ordered Gripper Gaskets which were incorrectly provided by

LAFAYETTE WINWATER WORKS COMPANY herein on this Project.

. . .

8.       Petitioner further pleads that the Gripper Gasket Company, L.L.C., advertises and promotes its Gripper Gasket as being designed and tested in accordance with the AWWA C-111/A211.11 guidelines and standards, and did not function as advertised by the Gripper Gasket Company, L.L.C., and also Petitioner contends that the Gripper Gaskets were too large. Therefore, the Gripper Gaskets were defective.

. . .

11.      Petitioner further pleads that LAFAYETTE WINWATER WORKS COMPANY and THE GRIPPER GASKET COMPANY, L.L.C. knew or should have known that the gaskets in question were defective, and that the gaskets could not be used for their intended purpose, thus, the Defendants are also liable to the Petitioner under the Louisiana Products Liability Act and redhibition.

12.      Because the gaskets were not the correct  gaskets, were inferior and defective, and could not be used for there intended purpose Petitioner was forced to separate, remove and replace each section of the ductile iron pipe that was leaking and this resulted in substantial damages to the Petitioner including but not exclusively, all costs and expenses associated with the purchase of the defective gaskets, all costs and expenses associated with the separation and removal of the leaking sections of the water line, all costs and expenses associated with the reconstruction of the water line, and also all delay damages resulting there from.

. . .

14.      Petitioner further avers that WESTFIELD INSURANCE COMPANY issued a policy of liability insurance insuring the acts and/or omissions of THE GRIPPER GASKET COMPANY, L.L.C., which provided coverage for circumstances as exist herein.

15.      For the reasons stated herein, the Defendants, THE GRIPPER GASKET COMPANY, L.L.C., LAFAYETTE WINWATER WORKS COMPANY, WESTFIELD INSURANCE COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, are indebted in *solido* to the Petitioner for the damages resulting there from including interests

at the highest rate allowed by law from the date of judicial demand until paid, reasonable attorney's fees and all costs of court."

6. The Plaintiff further alleges that Lafayette Winwater Works Company, a Co-Defendant of the Gripper Gasket Company, L.L.C., in the Broussard Action, has asserted a Third-Party action against the Gripper Gasket Company, L.L.C., in its' responsive pleadings to the Broussard Petition. A copy of Lafayette Winwater Works Company's Answer and Third-Party Demand is attached as *Exhibit" B"*, and sets forth in relevant part, the following:

> "24. Made third-party defendants herein is THE GRIPPER GASKET COMPANY, L.L.C., who is a foreign corporation authorized to do and doing business in the State of Louisiana.
>
> . . .
>
> Alternatively, and only in the event this Honorable Court should for any reason find third-party petitioner liable or responsible herein, which is at all times denied, then third-party petitioner prays that there be a judgment herein in their favor, and against third-party defendant, THE GRIPPER GASKET COMPANY, L.L.C., for full indemnification plus attorney's fees and cost, or in the alternative, for a contribution or apportionment of damages with legal interest thereon from the date of judicial demand until paid, and for all cost."

> Gripper Gasket has answered and has asserted:

> "Further answering the allegations contained in said petition, defendant, Westfield Insurance Company, shows that is had issued a policy of insurance to Gripper Gasket; however, defendant shows that the policy contains many conditions, provisions, exclusions and limitations, all of which defendant intends to and does plead the benefit of; defendant further shows that the policy itself is the best evidence of its contents."

7. The Plaintiff, Westfield Insurance Company, issued a commercial general liability policy for Gripper Gasket Company, L.L.C., Policy Number CWP3411168, Policy term September 19, 2006 through September 19, 2007, containing policy form CG 00 01 12 04, a

4

certified copy of which is attached to the Complaint as **_Exhibit "C"_**, and which states in relevant part as follows:

"SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement

. . .

    b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

    (2)    The "bodily injury" or "property damage" occurs during the policy period; and

. . .

    j.    Damage to Property

"Property damage" to:

. . .

    (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

    k.    Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

SECTION V – DEFINITIONS

8.    "Impaired property" means tangible property other than "your product" or "your work," that cannot be used or is less useful because:

a.     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

. . .

If such property can be restores to use by:

a.     The repair, replacement, adjustment or removal of "your product" or "your work"; or

. . .

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

17.     "Property damage" means:

a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at that time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21.     "Your product":

a.     Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

. . .

b.     Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

(2) The providing of or failure to provide warnings or instructions."

8.    The Plaintiff asserts the above-identified Broussard Action does not contain an "occurrence" under the Westfield Insurance Company general commercial liability policy issued to the Gripper Gasket Company, L.L.C., which would trigger coverage under the policy and/or a duty to defend under the policy.

9.    The Plaintiff, Westfield Insurance Company, asserts that the Broussard Action does not assert any "property damage" that would be covered by Westfield Insurance Company's general commercial liability policy issued to the Gripper Gasket Company, L.L.C. and therefore Westfield Insurance Company has no duty to defend or provide coverage to the Defendant as it relates to the Broussard Action.

10.    The Defendant has demanded and may continue to demand that the Plaintiff furnish it a defense in the Broussard Action pending in Louisiana and to pay any judgment entered therein, causing the Plaintiff to incur substantial expense to furnish such defense; and, moreover, proceeding with such defense may be alleged to constitute a waiver of the Plaintiff's rights under its policy of insurance.  If on the other hand, the Plaintiff refuses to defend the Defendant in the Broussard Action pending in Louisiana, before its right to do so has been adjudicated by this Court, the Plaintiff will be faced with the hazard of being subsequently held to breach of contract of insurance and also with the peril that the Broussard Action in Louisiana will be insufficiently defended or not defended at all.

11.    The Plaintiff asserts that an actual controversy exists between the parties hereto within the meaning of 28 U.S.C. § 2201, and this Court is vested with the power in the instant case in which the Plaintiff will be subject to substantial peril and expense, to declare and adjudicate the rights and other legal relationships of the parties to this action, with reference to issues raised by this Complaint.

**WHEREFORE,** the Plaintiff demands judgment as follows:

1.     The Court adjudicate and declare the Plaintiff's commercial general liability coverage policy Number CWP3411168, does not furnish insurance coverage to the Defendant with reference to the Broussard lawsuit pending in the 15th Judicial District, Lafayette Parish, Louisiana, Division "B", Case Number 2008-1870, and that the Court further declare that Plaintiff, Westfield Insurance Company, will no longer be required to continue a defense to the Gripper Gasket Company, L.L.C. in the Broussard Action.

2.     That the Plaintiff, Westfield Insurance Company, recover its costs and disbursements herein, including a reasonable sum for attorney's fees, if applicable.

3.     That the Plaintiff, Westfield Insurance Company, has such other general and further relief as the Court may deem just and equitable.

Dated this 8th day of April, 2009

Respectfully submitted,

**GLASGOW & VEAZEY**

By:     s/ Thomas W. Tucker, III
        RANDOLPH A. VEAZEY, #6056
        THOMAS W. TUCKER, III, #22319
        Attorneys for Plaintiff
        Washington Square Building, Suite 312
        222 Second Avenue, North
        Nashville, Tennessee 37201-1649
        615/244-4693
        615/256-0499 facsimile

Exhibit "A" –  "Petition for Damages", <u>R.J. Broussard General Contractors, Inc. v. Lafayette</u>
<u>Winwater Works, Company, The Gripper Gasket Company, L.L.C.,</u>
<u>Westfield Insurance Company and Travelers Property Casualty Company of</u>
<u>America,</u> 15th Judicial District Court, Lafayette Parrish, Louisiana, Division "B",
Docket Number 2008-1870

Exhibit "B" –  "Answer and Third-Party Demand" of Lafayette Winwater Works Company,
Docket Number 2008-1870, Division "B"

Exhibit "C" –  Westfield Insurance Company's commercial general liability coverage policy issued
to Gripper Gasket Company, L.L.C., Policy Number CWP3411168, Policy term
September 19, 2006 through September 19, 2007, containing policy form
CG 00 01 12 04

## COST BOND

We are surety for costs in this cause.

**GLASGOW & VEAZEY**

By:   <u>s/ Thomas W. Tucker, III</u>
      THOMAS W. TUCKER, III

EXHIBIT

A

R.J. BROUSSARD GENERAL
CONTRACTORS, INC.

VERSUS

LAFAYETTE WINWATER WORKS
COMPANY, THE GRIPPER GASKET
COMPANY, L.L.C., WESTFIELD
INSURANCE COMPANY, and
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

15TH JUDICIAL DISTRICT COURT

LAFAYETTE PARISH, LOUISIANA

DIV. "B"

DOCKET NO. 2008-1870

**********************************************************************

## PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel comes, R.J. BROUSSARD

GENERAL CONTRACTORS, INC., a Louisiana Corporation having its registered office located

in the Parish of Iberia, State of Louisiana, who, with respect represents:

1.

Made Defendants herein are:

A.  **LAFAYETTE WINWATER WORKS COMPANY**, a foreign
corporation, authorized to do and doing business in the State of Louisiana,
having its principal business establishment in Louisiana, located 600 E.
Verot School Road, Lafayette, Louisiana 70508, and who may be served
with legal process through its registered agent for service of process,
namely, Corporation Service Company, 320 Somerulos Street, Baton
Rouge, Louisiana 70802-6129; and

B.  **THE GRIPPER GASKET COMPANY, L.L.C.**, a foreign limited
liability company, who may be served through the Louisiana Long Arm
Statute through its registered agent of service, James Greer Southerland at
345 Plainview Height Circle, Greenville, Tennessee 37745;

C.  **WESTFIELD INSURANCE COMPANY**, a foreign insurer, authorized
to do and doing in the State of Louisiana, who may be served with legal
process through its agent for service of process, the Louisiana Secretary of
State, 8549 United Plaza Blvd., Baton Rouge, Louisiana 70809; and

D.  **TRAVELERS PROPERTY CASUALTY COMPANY OF
AMERICA**, a foreign insurer, authorized to do and doing business in the
State of Louisiana, who may be served with legal process through its agent
for service of process, the Louisiana Secretary of State, 8549 United Plaza
Blvd., Baton Rouge, Louisiana 70809.

(hereinafter sometimes collectively referred to as "Defendants"). Said Defendants are justly and

truly indebted unto the Petitioner, *in solido*, for damages as may be reasonable in the premises,

together with legal interest at the highest rate allowed by law from date of judicial demand until

paid, and together with reasonable attorney's fees and all costs of court incurred in connection

with this matter for the following reasons.

EXHIBIT

A

2.

Petitioner is a general contractor who entered into a contract with The Louisiana Water Company, agreeing to provide all labor and materials necessary to construct the water line in accordance with the project known as "2006 Water Systems Improvement, Transmission Waterline, Contract No. 06-1701-10 (hereinafter referred to sometimes as the Project).

3.

In order to construct the waterline in accordance with the project specifications, Petitioner ordered from the Defendant, LAFAYETTE WINWATER WORKS COMPANY, the ductile iron pipe and gaskets, specifically the Field Lok 350 gaskets that were to be used to connect the joints of ductile iron pipe.

4.

After constructing the waterline by installing the ductile iron pipe and the gaskets provided by LAFAYETTE WINWATER WORKS COMPANY, in April 2007 the water line was pressure tested which revealed leaks in several joints of the water line.

5.

Once the leaks were discovered, further testing and investigation was conducted and it was determined that the gaskets provided by LAFAYETTE WINWATER WORKS COMPANY failed and it was also discovered that the gaskets provided by LAFAYETTE WINWATER WORKS COMPANY were not the Field Lok 350 gaskets ordered by the Petitioner but were inferior and defective Gripper Gaskets manufactured by the GRIPPER GASKET COMPANY which gaskets did not meet the project specifications.

6.

For several years, the Petitioner has ordered and purchased from the LAFAYETTE WINWATER WORKS COMPANY the Field Lok 350 gaskets, at no time has the Petitioner ordered Gripper Gaskets which were incorrectly provided by LAFAYETTE WINWATER WORKS COMPANY herein on this Project.

7.

Further, when the gaskets were delivered to the project, LAFAYETTE WINWATER WORKS COMPANY failed to disclose to the Petitioner that the gaskets were the Gripper Gaskets. Instead LAFAYETTE WINWATER WORKS COMPANY conveyed to the Petitioner that the gaskets delivered were the Field Lok 350 gaskets, and LAFAYETTE WINWATER

EXHIBIT

A

350 gaskets. Throughout this process, LAFAYETTE WINWATER WORKS COMPANY knew or should have known the gaskets delivered and invoiced were the Gripper Gaskets. It was not until after the gaskets were installed and the leaks detected, that LAFAYETTE WINWATER WORKS COMPANY disclosed to the Petitioner that the gaskets delivered to the project where not the Field Lok 350 gaskets, which the Petitioner was invoiced and billed for, but were the inferior Gripper Gaskets.

8.

Petitioner further pleads that the Gripper Gasket Company, L.L.C., advertises and promotes its Gripper Gasket as being designed and tested in accordance with the AWWA C-111/A21.11 guidelines and standards. However, Petitioner contends that the Gripper Gaskets did not meet these guidelines and standards, and did not function as advertised by the Gripper Gasket Company, L.L.C, and also Petitioner contends that the Gripper Gaskets were too large. Therefore, the Gripper Gaskets were defective.

9.

Petitioner contends that because the gaskets provided by the LAFAYETTE WINWATER WORKS COMPANY were not the Field Lok 350 gaskets which were ordered by the Petitioner and because the gaskets were defective, the gaskets failed and this failure resulted in the water leaks.

10.

LAFAYETTE WINWATER WORKS COMPANY negligently and in breach of its obligations to Petitioner, sold to the Petitioner without its knowledge the Gripper Gaskets which were inferior and which did not meet the Project's specifications, thus, LAFAYETTE WINWATER WORKS COMPANY is liable to the Petitioner under negligent and breach of obligation theories of recovery.

11.

Petitioner further pleads that LAFAYETTE WINWATER WORKS COMPANY and THE GRIPPER GASKET COMPANY, L.L.C. knew or should have known that the gaskets in question were defective, and that the gaskets could not be used for their intended purposes, thus, the Defendants are also liable to the Petitioner under the Louisiana Products Liability Act and redhibition.

EXHIBIT

A

12.

Because the gaskets were not the correct gaskets, were inferior and defective, and could not be used for there intended purpose Petitioner was forced to separate, remove and replace each section of the ductile iron pipe that was leaking and this resulted in substantial damages to the Petitioner including but not exclusively, all costs and expenses associated with the purchase of the defective gaskets, all costs and expenses associated with the separation and removal of the leaking sections of the water line, all costs and expenses associated with the reconstruction of the water line, and also all delay damages resulting there from.

13.

Petitioner avers that the Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, issued a policy of liability insurance insuring the acts and/or omissions of LAFAYETTE WINWATER WORKS COMPANY, which provides coverage for circumstances as exists herein.

14.

Petitioner further avers that WESTFIELD INSURANCE COMPANY issued a policy of liability insurance insuring the acts and/or omissions of THE GRIPPER GASKET COMPANY, L.L.C., which provided coverage for circumstances as exist herein.

15.

For the reasons stated herein, the Defendants, THE GRIPPER GASKET COMPANY, L.L.C., LAFAYETTE WINWATER WORKS COMPANY, WESTFIELD INSURANCE COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, are indebted *in solido* to the Petitioner for the damages resulting there from including interests at the highest rate allowed by law from the date of judicial demand until paid, reasonable attorney's fees and all costs of court.

16.

Pleading further, Petitioner requests a Trial by Jury on all issues of this matter.

WHEREFORE, premises considered, Petitioner, R.J. BROUSSARD GENERAL CONTRACTORS, INC., prays that the Defendants, LAFAYETTE WINWATER WORKS COMPANY, THE GRIPPER GASKET COMPANY, L.L.C., WESTFIELD INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, be served with the foregoing Petition, and duly required to answer same within the delays allowed by law; and after due proceedings there be judgment in favor of the Petitioner, R.J. BROUSSARD

**EXHIBIT**

A

GENERAL CONTRACTORS, INC., and against the Defendants, LAFAYETTE WINWATER

WORKS COMPANY, THE GRIPPER GASKET COMPANY, L.L.C., WESTFIELD

INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF

AMERICA, *in solido*, for damages reasonable in the premises, including but not limited to all

costs associated with the purchase of the defective gaskets and all costs associated with the

removal and reconstruction of the waterline and all delays damages associated with the

completion of the project, together with legal interest at the highest rate allowed by law from

date of judicial demand until paid, reasonable attorney's fees and all costs of court, and that a

trial by jury be granted.

AND FOR ALL GENERAL AND EQUITABLE RELIEF, ETC.

Respectfully submitted,

ALLEN & GOOCH
(A Law Corporation)

EMILE JOSEPH, JR., #14410
ROBERT A. ROBERTSON, #27060
1015 St. John Street
PO Box 3768
Lafayette, Louisiana 70502-3768
337/291-1310
337/291-1315 (facsimile)
*Attorneys for Petitioner, R.J. BROUSSARD*
*GENERAL CONTRACTORS, INC.*

**PLEASE SERVE:**

**LAFAYETTE WINWATER WORKS COMPANY**
Through its Agent for Service of Process,
Corporation Service Company
600 E. Verot School Road
Lafayette, Louisiana 70508

**THE GRIPPER GASKET COMPANY, L.L.C.**
via the Long Arm Statute,
Through its registered agent of service
James Greer Southerland
345 Plainview Height Circle
Greenville, Tennessee 37745;

**WESTFIELD INSURANCE COMPANY**
Through its Agent for Service of Process,
Louisiana Secretary of State
8549 United Plaza Blvd.
Baton Rouge, Louisiana 70809



TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA
Through its Agent for Service of Process,
Louisiana Secretary of State
8549 United Plaza Blvd.
Baton Rouge, Louisiana 70809

R.J. BROUSSARD GENERAL
CONTRACTORS, INC.

15TH JUDICIAL DISTRICT COURT

VERSUS

LAFAYETTE PARISH, LOUISIANA

LAFAYETTE WINWATER WORKS
COMPANY, THE GRIPPER GASKET
COMPANY, L.L.C., WESTFIELD
INSURANCE COMPANY, and
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

DOCKET NO. _____

*****************************************************************************

## VERIFICATION

STATE OF LOUISIANA

PARISH OF LAFAYETTE

BEFORE ME, Notary, personally came and appeared _R J Broussard_ , on behalf

of R.J. BROUSSARD GENERAL CONTRACTORS, INC., who declared that he/she has read the

foregoing Petition for Damages and that the allegations of fact contained in it are true and correct.

_____
President on behalf of
R.J. BROUSSARD GENERAL CONTRACTORS,
INC.

SWORN TO AND SUBSCRIBED before me, Notary, this 26 day of

March , 2008.

_____
NOTARY PUBLIC
NOTARY NO. 09647


R.J. BROUSSARD GENERAL
CONTRACTORS, INC.

15TH JUDICIAL DISTRICT COURT

VERSUS

LAFAYETTE PARISH, LOUISIANA

LAFAYETTE WINWATER WORKS
COMPANY, THE GRIPPER GASKET
COMPANY, L.L.C., WESTFIELD
INSURANCE COMPANY, and
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

DOCKET NO. _____

*************************************************************************

## REQUEST FOR NOTICE OF TRIAL DATE, ETC.

TO THE CLERK OF COURT FOR THE 15TH JUDICIAL DISTRICT COURT, LAFAYETTE PARISH, LOUISIANA.

PLEASE TAKE NOTICE that EMILE JOSEPH, JR., attorney for R.J. BROUSSARD GENERAL CONTRACTORS, INC., hereby request written notice of the date of trial of the above matter as well as notice of hearings (whether on merits or otherwise), orders, judgments, and interlocutory decrees, and any and all formal steps taken by the parties herein, the judge or any member of Court, as provided in Louisiana Code of Civil Procedure of 1960, particularly Articles 1572, 1912 and 1914.

Respectfully submitted,

ALLEN & GOOCH
(A Law Corporation)

_____
EMILE JOSEPH, JR., #14410
ROBERT A. ROBERTSON, #27060
1015 St. John Street
PO Box 3768
Lafayette, Louisiana 70502-3768
337/291-1310
337/291-1315 (facsimile)
*Attorneys for Petitioner, R.J. BROUSSARD*
*GENERAL CONTRACTORS, INC.*

31 March 09

R.J. BROUSSARD GENERAL          15TH JUDICIAL DISTRICT COURT
CONTRACTORS, INC.

VERSUS                          LAFAYETTE PARISH, LOUISIANA

LAFAYETTE WINWATER WORKS
COMPANY, THE GRIPPER GASKET
COMPANY, L.L.C., WESTFIELD
INSURANCE COMPANY, and
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA              DOCKET NO. _____

**********************************************************************

<u>O R D E R</u>

CONSIDERING THE FOREGOING:

IT IS ORDERED THAT this matter be heard as a jury trial upon Plaintiff, R.J.

BROUSSARD GENERAL CONTRACTORS, INC., posting bond in the amount of

$ _5000_, with good and solvent surety _____ days before trial.

Lafayette, Louisiana, this __1__ day of __April__, 2008.

_____
DISTRICT JUDGE

Bond is to be posted no later than ninety (9.
days prior to trial or this matter will be pl.
as a bench trial at the end of the docket.

EXHIBIT

B
_____

7490485

R.J. BROUSSARD GENERAL
CONTRACTORS, INC.

15TH JUDICIAL DISTRICT COURT

VERSUS

LAFAYETTE PARISH, LOUISIANA

LAFAYETTE WINWATER WORKS
COMPANY, THE GRIPPER GASKET
COMPANY, L.L.C., WESTFIELD
INSURANCE COMPANY, and
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

DOCKET NO. 2008-1870 DIV. "E"

## ANSWER AND THIRD-PARTY DEMAND

NOW INTO COURT, through undersigned counsel comes, LAFAYETTE

WINWATER WORKS COMPANY, sought to be made defendant in the above

entitled and numbered suit, who, for answer to the plaintiff's petition, alleges that:

1.

Defendant admits domiciliary allegations of Paragraph 1 insofar as they

pertain to LAFAYETTE WINWATER WORKS COMPANY. The remaining

allegations of Paragraph 1 are denied.

2.

For lack of sufficient information to justify a belief therein, the allegations of

Paragraph 2 are denied.

3.

Defendant denies the allegations of Paragraph 3.

4.

For lack of sufficient information to justify a belief therein, the allegations of

Paragraph 4 are denied.

5.

The allegations of Paragraph 5 are denied.

6.

Defendant denies the allegations of Paragraph 6.

7.

Defendant denies the allegations of Paragraph 7.

EXHIBIT

B

8.

For lack of sufficient information to justify a belief therein, the allegations of Paragraph 8 are denied.

9.

Defendant denies the allegations of Paragraph 9.

10.

Defendant denies the allegations of Paragraph 10.

11.

Defendant denies the allegation of Paragraph 11.

12.

For lack of sufficient information to justify a belief therein, the allegations of Paragraph 12 are denied.

13.

In response to the allegation of Paragraph 13, defendant admits the issuance of a certain policy or policy of insurance by TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, but avers that the best evidence of the terms, conditions, revisions, limitations, exclusions and coverage of said policy are contained in the policy itself; defendant specifically pleads the terms of the policy as if copied here and in full and places plaintiff on his full proof of any allegations seeking to infer liability on behalf of any party by the virtue of the existence of said policy of insurance. The remaining allegations of Paragraph 13 are denied.

14.

For lack of sufficient information to justify a belief therein, the allegations of Paragraph 14 are denied.

15.

Defendant denies the allegations of Paragraph 15.

16.

Paragraph 16 requires neither affirmative nor negative response on behalf of defendant.

**EXHIBIT**

B

17.

This defendant denies that plaintiff sustained any damages as a result of any produce sold by this defendant.

18.

This defendant denies that any produce or products which it sold where the cause of any damages to plaintiff and this defendant contends that the problems and defects of which plaintiff complains were in no wise caused or brought about by any product sold by this defendant, but such condition was due solely to the acts and omissions of third persons, and the actions of the plaintiff.

19.

Further answering, and by way of affirmative defense, defendant says that the products which this defendant sold were at all times reasonably fit and suitable for the purposes for which they were sold and defendant denies that the same were in any wise defective for the use for which they were sold.

20.

This defendant denies the existence of any warranty on the part of this defendant and denies any fault or breach of warranty on the part of this defendant, but to the contrary, says that the product or products sold by it were at all times reasonably fit and suitable for the purposes for which they were manufactured and sold, and the damages to plaintiff, if any, did not result from any defect in said product. Further, any and all conditions which resulted from the use of the product were created during the installation thereof by plaintiff at which time the product was changed from the original form in which it was sold by this defendant. This defendant had no responsibility for the manner in which plaintiff installed the product.

21.

Defendant would further show that if any product distributed by it was defective in any way, which is not admitted, but specifically denied, then any defect arose after such product left the possession of the defendant and said product or products were materially altered, and that such alteration was proximate cause of the

been sustained by the plaintiff were proximately caused by the misuse of the things or products in question.

22.

Further answering herein, and in the alternative, this defendant says that the plaintiff's damages, if any, were caused by acts, wrongs, omissions and negligence of third parties, or a third party, for whose acts this defendant is in no wise liable or responsible; or in the alternative, if plaintiff sustained any damages from the use of any product, or from any breach of warranty, none of which are admitted, but denied, then such was the result of the fault or breach of warranty of third parties other than this defendant.

23.

And now, assuming the role of third-party petitioner, LAFAYETTE WINWATER WORKS COMPANY avers that:

24.

Made third-party defendants herein is THE GRIPPER GASKET COMPANY, L.L.C., who is a foreign corporation authorized to do and doing business in the State of Louisiana.

25.

Third-party petitioner has been sued in the above entitled and numbered cause by R.J. BROUSSARD GENERAL CONTRACTORS, INC. for damages for the sale of 24 inch gaskets made by THE GRIPPER GASKET COMPANY, L.L.C., all as more fully shown by reference to the original petition of R.J. BROUSSARD GENERAL CONTRACTORS, INC., to which reference is made for the alleged facts surrounding the sale and basis of contented responsibility of third-party petitioner.

26.

Third-party petitioner has denied any and all liability to plaintiff in the principal demand, all as is more fully shown by their answer filed herein.

27.

While at all times denying any responsibility herein, third-party petitioner avers that in the alternative, and solely in the event this Honorable Court should for

denied, then in that event, the ~~-par~~y petitioner avers that it would be entitled to complete indemnification in accordance with La. Civ. Code Art. 2531.

WHEREFORE, all premises considered, defendant prays that after the lapse of all legal delays and due proceedings had, there be a judgment herein in favor of the defendant, LAFAYETTE WINWATER WORKS COMPANY, and against the plaintiff, R.J. BROUSSARD GENERAL CONTRACTORS, INC., rejecting plaintiff's demands with full prejudice and at plaintiff's cost.

Third-party petitioner further prays that the third-party defendant, THE GRIPPER GASKET COMPANY, L.L.C., be duly served with a copy of the answer and third-party demand and cited to appear herein and answer same.

Alternatively, and only in the event this Honorable Court should for any reason find third-party petitioner liable or responsible herein, which is at all times denied, then third-party petitioner prays that there be a judgment herein in their favor, and against third-party defendant, THE GRIPPER GASKET COMPANY, L.L.C., for full indemnification plus attorney's fees and cost, or in the alternative, for a contribution or apportionment of damages with legal interest thereon from the date of judicial demand until paid, and for all cost.

Respectfully submitted,

LAW OFFICE OF CHRISTOPHER R. PHILIPP

*Christopher R. Philipp*

CHRISTOPHER R. PHILIPP #10499
120 Caillouet Place (70501)
P. O. Box 2369
Lafayette, Louisiana 70502
(337) 235-9478
Counsel for LAFAYETTE WINWATER WORKS
COMPANY

**PLEASE SERVE:**

**THE GRIPPER GASKET COMPANY, L.L.C.**
Through their attorney of record:
Ronald J. Fiorenza
934 3rd Street
Alexandria, LA

FILED THIS 5
DAY OF MAY , 20 08

Deputy Clerk of Court

A TRUE COPY ATTEST
Lafayette La.
CLERK OF COURT

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**EXHIBIT**

C

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

### f. Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

        **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**EXHIBIT**

C

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part de-

signed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

**EXHIBIT**

C

tabbies®

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment."

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**EXHIBIT**

**tabbies**

**C**

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.** **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.** **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.** **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product;"

**(2)** "Your work;" or

**(3)** "Impaired property;"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.** **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.** **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.** **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may at our discretion investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

**EXHIBIT**

C

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**EXHIBIT**

tabbies®

C

### n. Pollution - Related

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

### o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury:"

**a. Any insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or particpating in any physical exercises or games, sports or athletic contests.

**f. Products - Completed Operations Hazard**

Included within the "products-completed operations hazard."

**g. Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**EXHIBIT**

tabbies

C

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. · We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit."

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee· and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**EXHIBIT**

C

tabbies

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1) (a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1) (a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**EXHIBIT**

C

tabbies

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard;" and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:



EXHIBIT

C

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work;"

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**EXHIBIT**

C

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**EXHIBIT**

tabbies®

C

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

    a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

    c. All other parts of the world if the injury or damage arises out of:

        (1) Goods or products made or sold by you in the territory described in a. above; or

        (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

        (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought

to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

    b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement;

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. does not include that part of any contract or agreement:

        (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

        (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**EXHIBIT**

tabbies

C

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto;"

**b.** While it is in or on an aircraft, watercraft or "auto;" or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**EXHIBIT**

tabbies®

**C**

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been

put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products - completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**EXHIBIT**

C

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

(2) The providing of or failure to provide warnings or instructions.

EXHIBIT

tabbies®

C